```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
ALLSTATE LIFE INSURANCE COMPANY,                                 :
                                                                 :
                            Plaintiff,                           :
                                                                 :          21-cv-908 (LJL)
            -v-                                                  :
                                                                 :          OPINION AND ORDER
JAMES MOTA,                                                      :
                                                                 :
                            Defendant.                           :
                                                                 :
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/05/2021

LEWIS J. LIMAN, United States District Judge:

Plaintiff/Counterclaim-Defendant Allstate Life Insurance Company ("Allstate") moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the amended counterclaims of Defendant/Counterclaim-Plaintiff James Mota ("Mota") for failure to state a claim for relief. Dkt. No. 33.

For the following reasons, Allstate's motion to dismiss is granted in part and denied in part.

## BACKGROUND

For purposes of this motion, the Court accepts as true the allegations of Mota's amended counterclaims, Dkt. No. 24 ("Amended Counterclaims" or "Am. Countercl.").

Mota was a financial specialist for Allstate from 2013 until January 10, 2020. *Id.* ¶¶ 8, 26. Prior to joining Allstate, he had been a broker for New York Life Insurance Company ("New York Life"). *Id.* ¶ 8. Mota had a valued reputation in the industry and conducted himself with the highest integrity. *Id.* ¶ 9. For that reason, he refused Allstate's request that he target former clients at New York Life in order to bring them to Allstate. *Id.* He has established good

will with the clients and agents with whom he has engaged with over the years, and that good will has substantial economic value. *Id.* ¶¶ 10-11.

In the summer and fall of 2019, Mota had discussions with Allstate about becoming an Allstate agent, a position that would be inconsistent with continuing as an Allstate financial specialist. *Id.* ¶¶ 12-13, 16. As early as the summer of 2019, Allstate representatives and management were aware of his decision to terminate his financial specialist relationship with Allstate. *Id.* ¶ 15. In anticipation of becoming an Allstate agent, Mota began looking for his replacement to serve as an Allstate financial specialist to ensure that there would be a smooth transition for his clients. *Id.* ¶ 14. In the fall of 2019, however, Mota decided against becoming an agent when the Allstate representative with whom he had been talking regarding the Allstate agency reneged on many of the promises and assurances he had provided Mota. *Id.* ¶¶ 16-17. By that time, Mota had already procured his replacement as an Allstate financial specialist, Alan Weinstein ("Weinstein"), to take over his clients and customers. *Id.* ¶ 18-19.

Mota informed his Allstate superiors of his decision to leave Allstate in November 2019 and again in December 2019. *Id.* ¶ 20. On December 1, 2019, Weinstein was approved as an Allstate financial specialist to take over Mota's accounts. *Id.* ¶ 21. Two days later, Mota asked his Allstate supervisor for a letter of reference for a position at Prudential Insurance Company ("Prudential"). *Id.* ¶ 22. Throughout December 2019, Mota worked with Weinstein to ensure the smooth transition of his accounts. *Id.* ¶¶ 24, 27. As part of those efforts, in December 2019, Mota downloaded and shared with Weinstein two lists containing customer information necessary for Weinstein to service and renew accounts for Allstate. *Id.* ¶¶ 25, 28. When Mota officially resigned, his letter of resignation to Allstate advised that he had completed the

transition of his accounts to Weinstein and provided his personal cell number and personal email address in the event that Allstate needed to contact him. *Id.* ¶¶ 26-27, 29.

After Mota's departure from Allstate on January 10, 2020, Allstate sent numerous email messages to current and former Allstate clients, allegedly using Mota's name and likeness and falsely representing that Mota was still affiliated with Allstate. *Id.* ¶¶ 32-33, 75. For example, on April 5, 2020, Allstate sent an email to "Vladimir," used Mota's name, and represented to the customer that Mota was working for Allstate when Mota had in fact resigned several months earlier. *Id.* ¶ 77. Allstate repeated that conduct on June 16, 2020 in an email to "Sean" and again on September 30, 2020 in an email to "Joseph." *Id.* ¶ 78. Indeed, on October 22, 2020, Allstate admitted that, from the time of Mota's resignation, it continued to use his name and image as part of Allstate's "drip campaign" to profit from his name and image. *Id.* ¶ 79.

Meanwhile, in July 2020, Allstate sent Mota a cease-and-desist letter accusing him of inducing Allstate customers to cancel their coverage with Allstate and of misappropriating Allstate information. *Id.* ¶¶ 35-36. The letter allegedly contained false accusations, *id.* ¶¶ 35-36, and was "a sham, designed to chill Mota and other former Allstate Financial Specialists from continuing their legitimate work in the industry," *id.* ¶ 37. Mota responded two days later, rejecting Allstate's claims of wrongdoing and demanding that Allstate provide evidence supporting its allegations. *Id.* ¶ 38. Mota also told Allstate that it was continuing to send correspondence to its clients that falsely represented that Mota was still affiliated with Allstate. *Id.* ¶ 40. He also stated that he had returned all materials provided to him by Allstate and left all client folders in his office. *Id.* ¶ 41. Allstate did not acknowledge Mota's response and did not provide evidence to support the allegations but continued to send to Allstate clients correspondence that falsely represented that Mota was affiliated with Allstate. *Id.* ¶ 42.

After leaving Allstate, Mota had also requested that Allstate remove the software it had installed on his personal computer and which was interfering with his computer operations; Mota contacted Allstate technical support on several occasions, but Allstate ignored the requests. *Id.* ¶¶ 43-44, 48.  Ultimately, in October 2020, after Allstate still had not acknowledged Mota's communications and requests, Mota "reinstall[ed] his Windows operating system" at his own expense. *Id.* ¶ 49.

In October 2020, Allstate sent a second cease-and-desist letter to Mota, repeating the claims it had made in the earlier letter without identifying a specific Allstate client that had been wrongfully solicited by Mota. *Id.* ¶¶ 50-51.  Mota responded again a few days later. *Id.* ¶ 52. He again denied the allegations, noted Allstate's failure to respond to his earlier letter, complained about Allstate's continuing failure to respond to Mota's complaint that it was using his name to wrongfully solicit business and continuing to falsely represent that Mota was affiliated with Allstate, and explained that he had downloaded information prior to his departure in January 2020 solely to assist Weinstein in taking over Mota's accounts. *Id.* ¶¶ 53-55.  Mota also confirmed and reasserted that he had not solicited Allstate clients and had not used any confidential Allstate information. *Id.* ¶ 58.  Mota advised that clients who contacted him for new business and services were immediately referred to his replacement or to the area's financial services manager; he also disputed Allstate's contention that Mota suddenly resigned from Allstate. *Id.* ¶¶ 61, 63.  Mota advised Allstate that if "there is any specific issue or client that remains a concern please let me know, because I am certain that I can satisfy that concern." *Id.* ¶ 64.

Mota alleges that, "without any legitimate factual basis," Allstate filed this lawsuit to which Mota filed his Amended Counterclaims. *Id.* ¶ 65.  Mota alleges Allstate never engaged in

4

a good faith investigation of the facts alleged in the October 2020 cease-and-desist letter or in its complaint before filing this lawsuit, as evidenced by the fact that Allstate had not contacted Weinstein to confirm the accuracy of Mota's statements. *Id.* ¶ 56. Mota alleges that Allstate has pursued its claims despite having been later provided with a statement from Weinstein attesting to Mota's efforts to assist him in retaining Allstate clients and servicing Allstate agents. *Id.* ¶ 57. Mota alleges that, after his departure from Allstate, he continued to assist Allstate financial specialists and Allstate agents in servicing Allstate clients and in maintaining or acquiring new clients, *id.* ¶ 31, and that he "readily provided assistance to his former colleagues," *id.* ¶ 47.

Mota's current principal place of business is in Westwood, New Jersey. *Id.* ¶ 5. He alleges that Allstate's actions were directed towards him in New Jersey and caused harm to him in New Jersey by profiting from his goodwill and misleading customers, who might otherwise have sought his services, to believe he was still affiliated with Allstate. *Id.* ¶ 82. He also alleges that Allstate's conduct was directed towards him in New York and caused harm to him in New York. *Id.* ¶ 83.

## PROCEDURAL HISTORY

Allstate initiated this action by filing a complaint on February 2, 2021. Dkt. No. 1. The complaint alleges that Mota breached the Financial Specialist Employment Agreement he had with Allstate by misusing the Allstate confidential information with which he had been entrusted as a financial specialist and by soliciting Allstate customers to purchase Prudential products and services that competed with Allstate, all in violation of the confidentiality and restrictive covenant provisions of that agreement. *Id.* ¶¶ 31-40. It also alleges that Mota misused and disclosed Allstate's trade secrets and confidential information. *Id.* Allstate asserts three causes of action: breach of contract, violation of the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, and misappropriation of trade secrets under New York law. *Id.* ¶¶ 50-91.

Mota filed an answer and counterclaims on March 25, 2021. Dkt. No. 13. He asserted counterclaims for tortious interference with prospective business relations, unfair competition, misappropriation of Mota's name and image, and bad faith under the Defend Trade Secrets Act. *Id.* ¶¶ 66-108. Allstate moved to dismiss Mota's counterclaims. Dkt. No. 20. In response, Mota filed an amended answer and counterclaims, which dropped his claim for tortious interference but maintained his claims for unfair competition, misappropriation of his name and image, and bad faith under the Defend Trade Secrets Act. Am. Countercl. ¶¶ 66-89.

Allstate made the instant motion to dismiss Mota's Amended Counterclaims on May 19, 2021. Dkt. Nos. 29, 33.[1] Mota filed a memorandum in opposition, Dkt. No. 32; Allstate has not submitted a reply brief.

## LEGAL STANDARD

"A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *Town & Country Linen Corp. v. Ingenious Designs LLC*, 2020 WL 3472597, at *4 (S.D.N.Y. June 25, 2020) (citing *Orientview Techs. LLC v. Seven For All Mankind, LLC*, 2013 WL 4016302, at *2 (S.D.N.Y. Aug. 7, 2013)); *see also Evliyaoglu Tekstil A.S. v. Turko Textile LLC*, 2020 WL 7774377, at *2 (S.D.N.Y. Dec. 30, 2020). To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive

---

[1] Allstate's motion was not docketed until June 10, 2021 due to a filing error. *See* Dkt. Nos. 29, 33.

dismissal. *Twombly*, 550 U.S. at 555, 557. The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

## DISCUSSION

Allstate moves to dismiss all three counts of Mota's Amended Counterclaims. Mota argues he has stated a claim for unfair competition and for misappropriation of his name and image. For the reasons that follow, Allstate's motion is granted in part and denied in part.

### I. Consideration of the Financial Specialist Employment Agreement

In its motion to dismiss, Allstate relies on the Financial Specialist Employment Agreement that it alleges Mota signed with it. Dkt. No. 34 at 3. That Agreement, which is attached to Allstate's complaint and not Mota's Amended Counterclaims, contains a provision entitled "Covenant Not to Compete." Dkt. No. 1, Ex. A ¶ 13.[2] Mota denies signing the Agreement, which he contends is incomplete and not fully legible. Dkt. No. 32 at 11. He also argues that the allegations of the Amended Counterclaims, not Allstate's complaint, are to be taken as true on this motion to dismiss. *Id.* Mota is correct. *See O'Hearn v. Bodyonics, Ltd.*, 22

---

[2] The provision states: "Following the termination of this Agreement, whether by you or the Company, you agree that for a period of one year following termination you cannot be hired as an Allstate Agent and you agree that you will not directly or indirectly, by or through any partner, agent, employer or firm, advise, induce or attempt to induce any policyholder, insured, or annuitant of the Company or its affiliates to lapse, cancel or replace any annuity, insurance policy, variable policy or mutual fund." *Id.*

F. Supp. 2d 7, 10 (E.D.N.Y. 1998) (stating that on a motion to dismiss counterclaims, "the Court must accept the allegations of the counterclaims as true, and construe all reasonable inferences in favor of the defendants").

Further, as the Amended Counterclaims do not rely upon the Financial Specialist Employment Agreement, it is not incorporated by reference. A complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 382 (S.D.N.Y. 2020) (quoting *Cortec Indus., Inv. v. Sum Holdings,* 949 F.2d 42, 47 (2d Cir. 1991)). "Where a plaintiff has 'rel[ied] on the terms and effect of a document in drafting the complaint,' and that document is thus 'integral to the complaint,' [the court] may consider its contents even if it is not formally incorporated by reference." *Broder v. Cablevision Sys. Corp.*, 418 F. 3d 187, 196 (2d Cir. 2005) (alteration in original) (quoting *Chambers v. Time Warner, Inc.* 282 F.3d 147, 153 (2d Cir. 2002)). A court may not consider even a document integral to the complaint if a "dispute exists regarding the authenticity or accuracy of the document." *DiFalco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal citations and quotations omitted); *see Bongiorno v. Baquet*, 2021 WL 4311169, at *11 (S.D.N.Y. Sept. 20, 2021).

Mota does not cite or rely upon the Financial Specialist Employment Agreement or any of its terms in his Amended Counterclaims. Accordingly, the Court will not consider it on this motion to dismiss.

## II.     Unfair Competition

Mota's first count alleges that Allstate has committed the tort of unfair competition by (1) "threatening or suing former employees without a proper basis" including by sending them "cease and desist" letters; (2) misappropriating his name and likeness after the termination of his

employment; and (3) threatening litigation for violation of what he claims is a non-existent covenant to compete.  Am. Countercl. ¶¶ 67-70.

"The central principle underlying a claim for unfair competition under New York law is that one may not misappropriate the results of the labor, skill, and expenditures of another." *Link Co., Inc. v. Fujitsu Ltd.*, 230 F. Supp. 2d 492, 500 (S.D.N.Y. 2002).  "In New York, a plaintiff alleging unfair competition must demonstrate (1) that the defendant[] misappropriated the plaintiff's labors and expenditures; and (2) that the defendant[] acted in bad faith." *Purgess v. Sharrock*, 806 F. Supp. 1102, 1111 (S.D.N.Y. 1992) (citing *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980)).  New York law identifies several different forms of unfair competition including "trade secrets, trademark, trade name infringement, palming off, misappropriation, and false labeling or advertising." *Link Co.*, 230 F. Supp. 2d at 500.  Bad faith is also an essential element of an unfair competition claim.  *See Jeffrey Milstein, Inv. V. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 35 (2d Cir. 1995).  The law of unfair competition "is generally comprised of 'misappropriat[ing] for the commercial advantage of one person . . . a benefit or "property" right belonging to another.'" *Capstone Logistics Holdings, Inc. v. Navarrete*, 2020 WL 3429775, at *5 (S.D.N.Y. June 23, 2020) (alteration in original) (quoting *Roy Exp. Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982)).

Mota has satisfied the elements of a claim of unfair competition by alleging that Allstate misappropriated his name and the goodwill that he developed in the industry to steer customers to itself and away from him and his new employer.  Mota also alleges bad faith.  Taking the allegations of the Amended Counterclaims as true, Allstate knew it did not have the right to use Mota's name and likeness as Mota informed Allstate that it should cease and desist using his

name and likeness to attract customers. Yet Allstate continued to do so in the face of Mota's complaints for the purpose of misleading Mota's customers and inducing them to stay with Allstate rather than to follow him to his new employer.[3]

Mota, however, cannot recover under the law of unfair competition for what he claims is Allstate's bad faith claim against him for stealing its trade secrets. New York does not recognize bad faith litigation as a type of unfair competition. *See CA, Inc. v. Simple.com, Inc.*, 621 F. Supp. 2d 45, 53-54 (E.D.N.Y. 2009). Other remedies may be available to Mota if he establishes that Allstate brought this action in bad faith and without complying with the rules imposed on a party and counsel before initiating litigation. *See id.*; *cf. Cambridge Capital LLC v. Ruby Has LLC*, 2021 WL 4481183, at * 37 (S.D.N.Y. Sept. 30, 2021) (rejecting claim that groundless lawsuit constituted tortious interference and stating "[o]ther tools exist to address groundless lawsuits"). Those remedies, however, will not be through the law of unfair competition.

### III. Misappropriation of Name and Image

Allstate also moves to dismiss Mota's second counterclaim for misappropriation of his name and image. In that counterclaim, Mota alleges that Allstate misappropriated his name and image by representing to Allstate customers that he remained affiliated with Allstate after he had resigned, for the purposes of misleading customers into using Allstate's services and taking advantage of his goodwill. Am. Countercl. ¶¶ 9-10, 74-85.

Section 50 of the New York Civil Rights Law makes it a misdemeanor to "use[] for advertising purposes, or for the purposes of trade, the name, portrait, or picture of any living

---

[3] The Court does not consider on this motion whether Mota had a right to compete with Allstate within one year of his departure from the firm and thus whether, assuming the truth of the allegations of the Amended Counterclaims, he lost any business or commercial advantage to which he had an entitlement. As noted earlier, the Financial Specialist Employment Agreement is not incorporated by reference into the Amended Counterclaims.

person without having first obtained the written consent of such person." N.Y. Civ. Rights Law § 50. Section 51 provides a cause of action for injunctive relief and damages to any person whose name, portrait, or picture is so used.[4] *Id.* § 51. "[T]he statute applies to any use of a person's picture or portrait for advertising or trade purposes whenever the defendant has not obtained the person's written consent to do so." *Stephano v. News Group Publs*, 64 N.Y.2d 174, 183 (1984). "Thus where the written consent to use the plaintiff's name or picture for advertising or trade purposes has expired or the defendant has otherwise exceeded the limitations of the consent, the plaintiff may seek damages or other relief under the statute . . . ." *Id.* (citations omitted). "To establish liability under Section 51, a plaintiff 'must demonstrate each of four elements: (i) usage of plaintiff's name, portrait, picture, or voice, (ii) within the state of New York, (iii) for purposes of advertising or trade, (iv) without plaintiff's written consent.'" *Electra v. 59 Murray Enterps., Inc.*, 987 F.3d 233, 250 (2d Cir. 2021) (quoting *Molina v. Phoenix Sound Inc.*, 297 A.D. 2d 595, 597 (1st Dep't 2002)). "[T]he statute's terms are 'to be narrowly construed and strictly limited to nonconsensual commercial appropriations of the name, portrait, or picture of a living person.'" *Id.* (quoting *Messenger v. Gruner + Jahr Printing & Publ'g*, 208 F.3d 122, 125 (2d Cir. 2000)). "Whether a name is used for the purposes of trade is determined by examining whether the plaintiff's name was used to attract customers to the user .

---

[4] New York Civil Rights Law § 51 states, in relevant part: "Any person whose name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained . . . may maintain an equitable action in the supreme court of this state against the person, firm or corporation so using his name, portrait, picture or voice, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person's name, portrait, picture or voice in such manner as is forbidden or declared to be unlawful by section fifty of this article, the jury, in its discretion, may award exemplary damages."

. . ." *Liu v. Indium Corp. of Am.*, 2021 WL 3822871, at *4 (2d Cir. Aug. 27, 2021) (summary order).

Accepting Mota's allegations in the Amended Counterclaims as true, Mota has stated a claim for relief under Section 51 of the New York Civil Rights Law. He alleges that, after he left Allstate in January 2020, Allstate continued to use his name and reputation in New York, without authorization, for the purposes of attracting customers to Allstate's business. *See id.*

Allstate's arguments to the contrary are not convincing. It argues that the counterclaim fails to identify the customers with whom Allstate used Mota's name for commercial purposes. Dkt. No. 34 at 7. But that argument is plainly mistaken. Mota identifies three specific customers with whom Allstate allegedly used Mota's name to attract business. Am. Countercl. ¶¶ 77-78. He also alleges that Allstate admitted that it used his name and image as part of a campaign to profit from that name and image. *Id.* ¶ 79. In any event, Allstate cites no law for the proposition that a Section 51 plaintiff must identify particular customers whom the defendant targeted or that the statute's scope is limited to campaigns focused on individual customers. Such a reading of the statute would remove from its scope one of the primary evils at which Section 51 is directed—the use in mass advertising of a person's name without authorization for advertising or trade purposes.

Allstate's remaining arguments are no more successful at this stage. It argues that Mota fails to allege facts to support that he did not consent to usage of his name, Dkt. No. 34 at 7, but it does not identify what facts a Section 51 plaintiff should be required to plead when the fact at issue is the absence of an action—i.e., consent—and not some positive action. At any rate, Mota does plead lack of consent here. He identifies several letters he sent to Allstate stating that he did not consent to Allstate's use of his name. Am. Countercl. ¶¶ 40, 53. Allstate also argues that

Mota has not alleged use that occurred in New York, Dkt. No. 34 at 7, but Mota alleges that he does business in New York and that the conduct was directed at him in New York. Dkt. No. 24, Answer ¶ 3; Am. Countercl. ¶ 83.[5]

### IV. Bad Faith Under Defend Trade Secrets Act

Mota's third claim for relief is entitled "Bad Faith Claim Under the Defend Trade Secrets Act." Am. Countercl. at 21. Mota alleges that Allstate brought its claim under the Defend Trade Secrets Act in bad faith, that he has been damaged as a result, and that he is entitled to attorneys' fees and costs. *Id.* ¶¶ 87-89. Mota does not defend this claim in his opposition to Allstate's motion to dismiss, and the Court therefore deems it abandoned. *See, e.g., Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 393 (S.D.N.Y. 2021) ("Plaintiff has abandoned this claim by failing to brief the issue in response to Defendant's motion to dismiss."). The Defend Trade Secrets Act provides that, if a claim of misappropriation is "made in bad faith," a court may "award reasonable attorney's fees to the prevailing party." 18 U.S.C. § 1836(b)(3)(D). If Mota proves in his defense to Allstate's claim that the claim was brought in bad faith, he may seek (but is not necessarily entitled as a matter of right to) attorneys' fees. But the statute does not provide a separate, independent cause of action for a claim under the Defend Trade Secrets Act brought in bad faith.

### CONCLUSION

For the reasons stated, Allstate's motion to dismiss is GRANTED IN PART AND DENIED IN PART. Allstate's motion to dismiss the first and second counterclaims is denied; the third counterclaim is dismissed.

The Clerk of Court is respectfully directed to close Dkt. No. 33.

---

[5] Allstate does not direct its motion to Mota's claim under New Jersey law. Accordingly, the Court does not address that law.

SO ORDERED.

Dated: November 5, 2021
      New York, New York

                                      LEWIS J. LIMAN
                            United States District Judge