UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                            :
ALLSTATE LIFE INSURANCE COMPANY,    :
                                                                            :
                  Plaintiff,                :
                                                                            :           21-cv-908 (LJL)
       -v-                                              :
                                                                            :           OPINION AND ORDER
JAMES MOTA,                                       :
                                                                             :
                Defendant.             :
                                                                          :
-----------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Plaintiff/Counterclaim-Defendant Allstate Life Insurance Company ("Allstate") moves, pursuant to Federal Rule of Civil Procedure 56, for summary judgment in its favor and against Defendant/Counterclaim-Plaintiff James Mota ("Mota") on all pending claims and counterclaims. Dkt. No. 87. In turn, Mota moves, pursuant to Federal Rule of Civil Procedure 56, for partial summary judgment on his second counterclaim for misappropriation of his name and image. Dkt. No. 89.

      For the following reasons, Allstate's motion for summary judgment is denied, and Mota's motion for partial summary judgment is granted.

## BACKGROUND & PROCEDURAL HISTORY

      Allstate initiated this action by filing a complaint on February 2, 2021. Dkt. No. 1. The complaint alleges that Mota was a financial specialist at Allstate before he resigned and began working for Prudential Life Insurance Company ("Prudential"), an Allstate competitor. *Id.* ¶¶ 20, 32. The complaint alleges that Mota breached the Financial Specialist Employment Agreement he had with Allstate by misusing the Allstate confidential information with which he had been entrusted as a financial specialist and by soliciting Allstate customers to purchase

Prudential products and services that competed with Allstate, all in violation of the confidentiality and restrictive covenant provisions of that agreement. *Id.* ¶¶ 31–40. It also alleges that Mota misused and disclosed Allstate's trade secrets and confidential information. *Id.* Allstate's complaint brings three causes of action: (1) breach of contract; (2) violation of the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*; and (3) misappropriation of trade secrets under New York law. *Id.* ¶¶ 50–91.

Mota filed an answer and amended counterclaims on April 28, 2021.[1] Dkt. No. 24 (containing both Mota's "Answer" and "Am. CC"). Mota does not deny that he worked as a financial specialist for Allstate from May 2013 until he resigned effective January 2020, that he began working for Prudential after resigning from Allstate, and that Prudential and Allstate offer some competing products and/or services, but he denies that he was subject to a non-compete agreement or that he misused and disclosed Allstate trade secrets and confidential information after he left Allstate or solicited Allstate customers to purchase Prudential products and services that competed with Allstate. *See* Answer. Mota's amended counterclaims allege that, after he left Allstate, Allstate sent numerous emails to current and former Allstate clients using Mota's name and likeness and falsely representing that he was still affiliated with Allstate. Am. CC ¶¶ 32–33, 75. The counterclaims also allege that, in July and October 2020, Allstate sent Mota cease-and-desist letters falsely accusing him of inducing Allstate customers to cancel their coverage with Allstate and of misappropriating Allstate information. *Id.* ¶¶ 35–36, 50–51. The

---

[1] Mota first filed an answer and counterclaims on March 25, 2021, asserting counterclaims for tortious interference with prospective business relations, unfair competition, misappropriation of his name and image, and bad faith under the Defend Trade Secrets Act. Dkt. No. 13 ¶¶ 66–108. After Allstate moved to dismiss Mota's counterclaims, Dkt. No. 20, Mota filed an amended answer and counterclaims, which dropped his claim for tortious interference, Dkt. No. 24 ¶¶ 66–89.

counterclaims allege that Allstate's accusations were "a sham, designed to chill Mota and other former Allstate Financial Specialists from continuing their legitimate work in the industry."  *Id.* ¶ 37.  Mota brings three counterclaims for unfair competition, misappropriation of his name and image, and bad faith under the Defend Trade Secrets Act.  *Id.* ¶¶ 66–89.

Allstate moved to dismiss Mota's amended counterclaims on May 19, 2021.  Dkt. Nos. 29, 33.[2]  The Court granted Allstate's motion in part and denied it in part on November 5, 2021. *Allstate Life Ins. Co. v. Mota*, 2021 WL 5166819 (S.D.N.Y. Nov. 5, 2021).  The Court granted Allstate's motion to dismiss the third counterclaim for bad faith under the Defend Trade Secrets Act but denied the motion as to the counterclaims for unfair competition and misappropriation of Mota's name and image.  *Id.* at *7.  Allstate answered the counterclaims on January 12, 2022. Dkt. No. 67.

Both Allstate and Mota moved for summary judgment on February 25, 2022.  Dkt. Nos. 87, 89.  Allstate moves for summary judgment on all pending claims and counterclaims, Dkt. No. 87, and Mota moves for partial summary judgment on his second counterclaim for misappropriation of his name and image, Dkt. No. 89.  The parties filed their memoranda of law in opposition to the respective summary judgment motions on March 25, 2022, Dkt. Nos. 99, 101, and filed their reply memoranda of law on April 1, 2022, Dkt. Nos. 106–107.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n

---

[2] Allstate's motion was not docketed until June 10, 2021 due to a filing error.  *See* Dkt. Nos. 29, 33.

3

issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In determining whether there are any genuine issues of material fact, the Court must view all facts "in the light most favorable to the non-moving party," *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001), and the movant bears the burden of demonstrating that "no genuine issue of material fact exists," *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted). If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

"[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)). Nor may the non-moving party "rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The non-moving party must also demonstrate more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not

credible."  *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citation omitted).

## DISCUSSION

The Court first addresses Mota's motion for partial summary judgment before turning to Allstate's motion for summary judgment.

**I.     Mota's Motion for Partial Summary Judgment**

Mota moves for summary judgment on his second counterclaim for misappropriation of his name and image under New York law.  Dkt. No. 89.

**A.     Undisputed Facts**

Though Allstate filed a memorandum of law in opposition to Mota's motion, Allstate failed to file a response to Mota's Rule 56.1 statement.  Local Rule 56.1 requires that "[t]he papers opposing a motion for summary judgment . . . include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  L.R. 56.1(b).  It also provides that "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."  L.R. 56.1(c).  Because Allstate failed to submit a counterstatement and thus did not specifically controvert the facts set forth in Mota's 56.1 statement, the facts in Mota's 56.1 statement supported by citations to admissible evidence are deemed admitted for purposes of Mota's motion.  *See, e.g.*, *Genova v. Cnty. of Nassau*, 851 F. App'x 241, 243–44 (2d Cir. 2021) (summary order) ("[O]ur precedents make clear that although a district court 'may in its discretion opt to "conduct an assiduous

5

review of the record" even where one of the parties has failed to file' a Local Rule 56.1 statement, the district court "'is not required to consider what the parties fail to point out" in their Local Rule 56.1 statements.'" (quoting *Holtz*, 258 F.3d at 73)); *Suares v. Cityscape Tours, Inc.*, 603 F. App'x 16, 17–18 (2d Cir. 2015) (summary order); *Galindo v. Instalaciones de Tendidos Telefonicos, S.A.*, 508 F. App'x 76, 79 (2d Cir. 2013) (summary order).

Those facts that are material to the resolution of Mota's motion and that are supported by citations to admissible evidence include the following: Mota joined Allstate Life Insurance Company of New York in May 2013. Dkt. No. 93 ("Mota's 56.1") ¶ 2. Mota established valuable good will with the clients and agents he has engaged with over the years. *Id.* ¶ 6. This good will has substantial economic value, as evidenced by the fact that, in 2017 and 2018, Mota received the "Best in Company" award from Allstate, which rewards the top performing solo producer in the country. *Id.* ¶¶ 7–9.

Mota officially resigned his position with Allstate on January 4, 2020. *Id.* ¶ 10. Shortly after Mota's departure, Allstate sent numerous email messages to current and former Allstate clients, using Mota's name and email signature without permission and representing that Mota was affiliated with Allstate. *Id.* ¶¶ 13–15. The emails were part of a "Drip Campaign," which was part of Allstate's marketing efforts. *Id.* ¶ 35. In total, Allstate sent 874 emails (including duplicates) to 666 different recipients, many on multiple dates, resulting in 743 separate email communications in Mota's name. *Id.* ¶¶ 31–32. Mota never authorized Allstate to send the marketing solicitations after his resignation from Allstate. *Id.* ¶ 24.

On July 9, 2020, Mota received a cease-and-desist letter from Allstate's counsel claiming that he had induced Allstate customers to cancel their coverage with Allstate and that he had misappropriated Allstate information. *Id.* ¶¶ 17–18. The next day, on July 10, 2020, Mota

responded via email and, among other things, advised Allstate that it was continuing to send correspondence to Allstate clients that falsely represented that he was affiliated with Allstate. *Id.* ¶¶ 19–20, 22. Allstate ignored Mota's response to the letter and his demand that it cease sending marketing solicitations in Mota's name. *Id.* ¶¶ 21, 23.

On October 19, 2020, Mota received another letter from Allstate, which repeated Allstate's prior claims alleging his wrongful solicitation. *Id.* ¶ 26. As of October 20, 2020, Allstate continued to use Mota's name and email signature. *Id.* ¶ 30. On October 22, 2020, Mota again responded to Allstate, noting Allstate's failure to respond to his previous letter and to his complaints that Allstate was continuing to use his name and to falsely represent that he was affiliated with Allstate after he had left the company. *Id.* ¶¶ 28–29.

Allstate employee Scott Delaney ("Delaney") testified that sending the Drip Campaign emails that included Mota's name and signature was done in error and that the Allstate IT department was responsible for terminating the Drip Campaign associated with Mota. *Id.* ¶¶ 8, 33–34.

B. **Mota Is Entitled to Partial Summary Judgment**

Mota argues that he is entitled to summary judgment as to liability on his second counterclaim under Sections 50 and 51 of the New York Civil Rights Law because Allstate used Mota's name as part of its marketing campaign, did so for commercial purposes, and did so without his consent. Dkt. No. 92 at 6–8. Allstate's arguments in response rely on facts not in the record on Mota's motion for partial summary judgment.

Section 50 of the New York Civil Rights Law provides that "a person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person . . . is guilty of a misdemeanor." N.Y. Civ. Rights Law § 50. Section 51 provides a private cause of

7

action for violations of Section 50. N.Y. Civ. Rights Law § 51. Section 51 provides that "[a]ny person whose name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained," as provided in Section 50, "may maintain an equitable action . . . against the person, firm or corporation so using his name, portrait, picture or voice, to prevent and restrain the use thereof." *Id.* An individual "may also sue and recover damages for any injuries sustained by reason of such use." *Id.* In addition, "if the defendant shall have knowingly used such person's name, portrait, picture or voice in such matter as is forbidden or declared to be unlawful by section fifty of this article, the jury, in its discretion, may award exemplary damages." *Id.*

"To establish liability under Section 51, a plaintiff 'must demonstrate each of four elements: (i) usage of plaintiff's name, portrait, picture, or voice, (ii) within the state of New York, (iii) for purposes of advertising or trade, (iv) without plaintiff's written consent.'" *Electra v. 59 Murray Enterprises, Inc.*, 987 F.3d 233, 249 (2d Cir. 2021) (quoting *Molina v. Phx. Sound Inc.*, 747 N.Y.S.2d 227, 230 (1st Dep't 2002)); *see also Marshall v. Marshall*, 504 F. App'x 20, 22–23 (2d Cir. 2012) (summary order); *Sketchworks Industrial Strength Comedy, Inc. v. Jacobs*, 2022 WL 1501024, at *9 (S.D.N.Y. May 12, 2022). "'A name, portrait or picture is used "for advertising purposes" if it appears in a publication which, taken in its entirety, was distributed for use in, or as part of, an advertisement or solicitation for patronage of a particular product or service,' and is used for purposes of trade if it 'involves use which would draw trade to the firm.'" *Electra*, 987 F.3d at 249 (first quoting *Beverley v. Choices Women's Med. Ctr., Inc.*, 587 N.E.2d 275, 278 (N.Y. 1991); and then quoting *Kane v. Orange Cty. Publ'ns*, 649 N.Y.S.2d 23, 25 (2d Dep't 1996)). "The New York Court of Appeals has held that to be liable for compensatory damages for use of a person's name, portrait or picture based on an advertising

8

purpose claim, defendant need not have known that its use was without plaintiff's consent." *Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 130 (2d Cir. 1984) (citing *Welch v. Mr. Christmas*, 440 N.E.2d 1317 (N.Y. 1982)).

Based on the undisputed facts before the Court on this motion, Mota is entitled to summary judgment on his second counterclaim. First, there is no genuine dispute of fact that Allstate used Mota's name in numerous email messages sent to current and former Allstate clients. Second, there is no dispute that the events in question took place in New York as Mota has provided evidence that he worked for Allstate Life Insurance Company of New York and the emails were sent by his former employer. Third, the emails were sent for purposes of advertising and trade because they were part of a Drip Campaign, which was part of Allstate's marketing efforts. In other words, the emails with Mota's name appeared in a publication that was distributed as part of an advertisement. Finally, the emails were sent without Mota's consent; Mota never authorized Allstate to send the marketing solicitations after his resignation from Allstate.

Allstate's arguments in opposition are based on its own version of the facts, but, as discussed above, because Allstate failed to adhere to Local Rule 56.1, Mota's facts are deemed admitted for purposes of this motion. Even if the facts included in Allstate's opposition memorandum of law were considered, many of these facts do not cite to admissible evidence in support.[3] Putting aside those issues *arguendo*, Allstate's arguments would still not prevail. Allstate argues that Mota consented to and initiated the use of the Drip Campaign, which he failed to cancel before departing Allstate, and that, to the extent there was any violation, such

---

[3] For example, in the "Statement of Facts" in its opposition memorandum, Allstate asserts that "the [Drip] [C]ampaign and use by Allstate was at most, unintended," but this statement is not followed by citations to admissible evidence. Dkt. No. 99 at 3.

9

violation was inadvertent, neither purposeful nor used in an effort to make a commercial gain. Dkt. No. 99 at 1. First, Allstate does not contest that, after Mota departed Allstate, the emails with Mota's name were sent within New York without his consent. Whether he consented to Allstate's earlier use of his name—when he was with Allstate—thus is immaterial to the question whether Allstate had his consent after he departed the company and cannot forestall summary judgment in Mota's favor. Second, although Allstate would pin responsibility on Mota for failing to cancel the Drip Campaign upon his departure from Allstate, its own employee Delaney testified that the obligation to end the Drip Campaign would fall to someone in the IT department, and Allstate has offered no evidence that a departing employee must take action to stop Allstate from doing what its very employee says Allstate should have done on its own. Third, Allstate argues that use of Mota's name was not for advertising purposes because, according to Allstate's version of the facts, it sent the emails inadvertently. But the two facts are not mutually exclusive; they both can be true. A name "'is used "for advertising purposes" if it appears in a publication, which, taken in its entirety, was distributed for use in, or as part of, an advertisement or solicitation for patronage of a particular product or service.'" *Electra*, 987 F.3d at 249 (quoting *Beverley*, 587 N.E.2d at 278). There is no genuine fact question that Allstate used the emails as part of a marketing campaign; Allstate does not argue otherwise.

    Accepting Allstate's contention that it sent the emails inadvertently or unknowingly, that contention would not provide a legal defense to Mota's claim. Sections 50 and 51 of New York Civil Rights Law do not contain a requirement that the defendant knowingly used the person's name in order to establish liability. "By its terms the statute applies to *any* use of a person's [name], picture or portrait for advertising or trade purposes whenever the defendant has not obtained the person's written consent to do so." *Stephano v. News Group Publications, Inc.*, 474

N.E.2d 580, 584 (N.Y. 1984) (emphasis added). Rather, Section 51 provides that a jury may award exemplary damages "if the defendant shall have *knowingly* used such person's name, portrait, picture or voice in such a manner as is forbidden or declared to be unlawful by section fifty." N.Y. Civ. Rights Law § 51 (emphasis added). Thus, even assuming it were true and supported by undisputed admissible evidence that Allstate's sales team first learned about the emails in October 2020 and immediately discontinued their use thereafter,[4] this fact would speak to the availability of exemplary damages to be awarded by a jury; it would not speak to whether Allstate violated the law.[5]

\* \* \*

For the reasons given, Mota is granted summary judgment as to liability on his second counterclaim. Damages on this counterclaim are to be determined at trial.

## II. Allstate's Motion for Summary Judgment Is Denied

Allstate moves for summary judgment on all pending claims and counterclaims.[6] Dkt. No. 87. Mota responds, among other arguments, that Allstate's failure to file a statement of undisputed material facts provides an independent procedural basis upon which the motion should be denied. Dkt. No. 101 at 10. Mota also argues that Allstate's statement of facts in its memorandum of law in support of its motion and the documents annexed by counsel to the memorandum of law are not evidence to be considered on this motion. *Id.* at 9.

---

[4] Allstate does not address Mota's July 10, 2020 email, which advised Allstate that it was continuing to send correspondence to Allstate clients that falsely represented that Mota was affiliated with Allstate.
[5] Allstate also argues that its conduct does not constitute unfair competition, Dkt. No. 99 at 6, but Mota is not moving for summary judgment on that claim.
[6] Allstate perplexingly argues that it is entitled to summary judgment on Mota's third counterclaim. Dkt. No. 88 at 15-16. The Court, however, previously dismissed that counterclaim. *See Allstate*, 2021 WL 5166819, at \*6.

Allstate failed to comply with Local Rule 56.1. The Southern District's Local Civil Rule 56.1 sets forth specific requirements about how the facts relied upon by the moving party and disputed by the opposing party are to be presented. Any party moving for summary judgment must "annex[] to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." L.R. 56.1(a). "Failure to submit such a statement may constitute grounds for denial of the motion." *Id.* All statements in a Local Rule 56.1 submission "must be followed by citation to evidence which would be admissible." L.R. 56.1(d). "Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." L.R. 56.1(c).

"A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz*, 258 F.3d at 73. "While the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion, it is not required to consider what the parties fail to point out." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000). Courts in this District and in the Eastern District of New York have denied summary judgment based on a party's failure to comply with Local Rule 56.1. *See, e.g.*, *Felton v. King of Salsa, LLC*, 2010 WL 1789934, at *2 (S.D.N.Y. May 4, 2010) ("Defendants have failed to comply with Local Rule 56.1(a) with respect to statements of material facts. This failure results in the denial of their motion for summary judgment." (citing cases)); *MSF Holding Ltd. v. Fiduciary Tr. Co. Int'l*, 435 F. Supp. 2d 285, 304 (S.D.N.Y. 2006) (denying summary judgment motion because party "has

not complied with the requirements of Local Rule 56.1"); *Searight v. Doherty Enterprises, Inc.*, 2005 WL 2413590, at *1 (E.D.N.Y. Sept. 29, 2005) (denying summary judgment motion where party moving for summary judgment "failed to submit the required 56.1 statement").

Here, Allstate ignored the requirements of Local Rule 56.1. Allstate neglected to submit a "separate, short and concise statement, in numbered paragraphs, of material facts as to which the moving party contends there is no genuine issue to be tried." L.R. 56.1(a). Such failure constitutes "grounds for denial of the motion." *Id.* In its reply brief, Allstate notes that its "opening brief inadvertently did not include numbered paragraphs for the statement of facts." Dkt. No. 106 at 2 n.1. Allstate, however, never sought to correct this alleged error and does not acknowledge Local Rule 56.1's requirement that the statement be a "*separate*, short and concise statement, in numbered paragraphs, of material facts." L.R. 56.1(a) (emphasis added). Further, even if the Court were to construe the statement of facts in Allstate's memorandum of law in support of its motion as its Local Rule 56.1 statement, the statement of facts falls short of the requirement that "[e]ach statement . . . be followed by citation to evidence which would be admissible." L.R. 56.1(d). A number of statements in Allstate's statement of facts are not followed by any citation to the record. *See* Dkt. No. 88 at 2–5. And, for those statements that do cite to exhibits attached to the memorandum of law, many of those exhibits are not admissible as discussed further *infra*. Finally, the Court notes that Allstate is represented by counsel in this matter and is not entitled to any "special latitude" that a pro se litigant may be given with respect to a motion for summary judgment. *Williams v. Savory*, 87 F. Supp. 3d 437, 451 (S.D.N.Y. 2015) (quoting *Knowles v. N.Y.C. Dep't of Corr.*, 904 F. Supp. 217, 220 (S.D.N.Y. 1995)).

Moreover, even if the Court chose to ignore Allstate's violation of the Local Rule and to engage in an "assiduous review of the record" in its discretion, *Holtz*, 258 F.3d at 73, the Court

would deny the motion for Allstate's failure to support it with admissible evidence demonstrating the absence of a genuine issue of fact. It is elementary that "[o]n a summary judgment motion, the district court properly considers only evidence that would be admissible at trial." *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "Evidence that is not properly authenticated is not in admissible form and therefore may not be considered in support of or in opposition to a summary judgment motion." *Shamrock Power Sales, LLC v. Scherer*, 2015 WL 5730339, at *17 (S.D.N.Y. Sept. 30, 2015) (quoting *White Diamond Co. v. Castco, Inc.*, 436 F. Supp. 2d 615, 624–25 (S.D.N.Y. 2006)); *see also Rodriguez v. Vill. of Port Chester*, 535 F. Supp. 3d 202, 218 (S.D.N.Y. 2021) ("Authentication is 'a condition precedent to admitting evidence.'" (quoting *United States v. Vayner*, 769 F.3d 125, 129 (2d Cir. 2014))). "[A] document is admissible in evidence only if it is authenticated by extrinsic 'evidence sufficient to support a finding that the item is what the proponent claims it is,' Fed. R. Evid. 901(a), or is a 'self-authenticating' document for which extrinsic evidence of authenticity is not required, Fed. R. Evid. 902." *Sanchun Yu v. Diguojiaoyu, Inc.*, 2019 WL 6174204, at *7 (S.D.N.Y. Nov. 20, 2019); *see also Shamrock Power Sales*, 2015 WL 5730339, at *17 (alteration in original) ("Rule 901 provides several non-exhaustive methods for authenticating evidence, for example '[t]estimony that an item is what it is claimed to be.'"); Fed. R. Evid. 901; Fed. R. Evid. 902.[7] In addition, "[i]t is elementary, of course, that merely 'because a document is authenticated does not mean it is admissible. It may, for example, need to meet the hearsay

---

[7] For example, evidence that is self-authenticating includes "domestic public documents that are sealed and signed, domestic public documents that are signed and certified, foreign public documents, certified copies of public records, official publications, newspapers and periodicals, trade inscriptions, acknowledged documents, commercial paper and related documents, presumptions under a federal statute, certified domestic records of a regularly conducted activity, and certified foreign records of a regularly conducted activity." *Shamrock Power Sales*, 2015 WL 5730339, at *17 (citing Fed. R. Evid. 902).

14

requirements if it is offered to prove the truth of assertions made in it.'" *Bokkelen v. Grumman Aerospace Corp.*, 432 F. Supp. 329, 331 (E.D.N.Y. 1977) (quoting 5 Weinstein's Evidence § 901(a)(02) at 901–20).

Allstate relies primarily upon evidence that is not authenticated in admissible form. It cites to a slew of documents that are merely appended to its memorandum of law in support of the motion for summary judgment without any declaration by a person or document custodian with knowledge or even by an affidavit of counsel establishing that the documents are what they purport to be. Granted, certain of the evidence is in the form of deposition excerpts or Mota's responses to requests for admission and thus are properly considered. *See* 11 Moore's Federal Practice - Civil § 56.93[1][b] (2022) ("A deposition is authenticated when the deponent and the action are identified and the reporter who took the deposition has certified that the transcript is a true record of the deponent's testimony. This is ordinarily accomplished by attaching the cover page of the deposition and the reporter's certification to every deposition submitted in support of or in opposition to the motion. . . . When a document has been authenticated by a party, the requirement of authenticity is satisfied as to that document for all parties, subject to the right of any party to present evidence disputing its authenticity."); *Virga v. Big Apple Const. & Restoration Inc.*, 590 F. Supp. 2d 467, 471 (S.D.N.Y. 2008) ("For the purposes of summary judgment, matters admitted under rule 36(a) of the Federal Rules of Civil Procedure may be used for summary judgment under rule 56."); *see also* Fed. R. Civ. P. 56(c)(1)(A) (deposition excerpts and responses to request for admission properly considered on summary judgment). But others, such as the Employment Agreement or emails from Mota himself, might be admissible as business records or admissions (or received for the non-hearsay purpose of what they state rather than the truth of the matter asserted), but they are not supported by evidence that they are what

they purport to be.  *See Fortune Soc'y v. Sandcastle Towers Hous. Dev. Fund Corp.*, 388 F. Supp. 3d 145, 157 n.6 (E.D.N.Y. 2019) ("To the extent that the document (and others like it) contains party admissions, it is not barred by the hearsay rules.").  And others which are critical, such as the audit report from "Defendant's TC Dashboard," Dkt. No. 88, Ex. 9, are offered without any explanation as to how they would fall within a hearsay exception even if they were admissible, *see Shamrock Power Sales*, 2015 WL 5730339, at *17 (granting motion to strike unauthenticated documents where some of the documents were offered for the truth of the matter asserted and party had "offer[ed] no reasons that could allow the Court to find that the documents fit into any exception to the hearsay rule").  Therefore, these exhibits cannot be considered on Allstate's motion for summary judgment.  *See Sanchun Yu*, 2019 WL 6174204, at *7 ("Documents that are not 'attached to an affidavit made on personal knowledge setting forth facts that would be admissible in evidence' and sufficient to authenticate the document 'cannot be considered.'" (quoting *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 635 n.20 (8th Cir. 2000))); *Silman v. Utica Coll.*, 2016 WL 4275721, at *5 (N.D.N.Y. Aug. 12, 2016) ("It is well settled that unauthenticated documents cannot be considered on a motion for summary judgment." (quoting *Canada v. Blain's Helicopter, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987))).

* * *

For the reasons given, Allstate's motion for summary judgment is denied.

### III. Parties' Failure to Follow the Court's Individual Practices Regarding Sealing

Finally, the Court addresses the parties' conduct regarding sealing.  The Court directs the parties to Paragraph 2(G) of its Individual Practices in Civil Cases (effective April 9, 2021 and available at https://www.nysd.uscourts.gov/hon-lewis-j-liman).  Allstate filed many documents under seal without the Court's permission.  Allstate filed under seal Exhibits 1, 5, 6, 9, 11, 12,

and 13 to its memorandum of law in support of its motion for summary judgment,[8] *see* Dkt. No. 88, Exs. 1, 5–6, 9, 11–13, as well as Exhibit 3 to its memorandum opposing Mota's motion for partial summary judgment, Dkt. No. 99; *see also* Dkt. No. 100. Likewise, Mota filed under seal Exhibit 4 to his declaration in opposition to Allstate's motion for summary judgment. Dkt. No. 105; *see also* Dkt. No. 104-4. Neither party filed a letter motion for approval of the sealed filings or otherwise followed the procedures required by this Court's Individual Practices. In filing those exhibits under seal, both parties cite to the Protective Orders entered in this case. *See* Dkt. No. 88, Exs. 1, 5–6, 9, 11–13 (citing Dkt. No. 85); Dkt. No. 99 (citing Dkt. No. 16); Dkt. No. 105 (same).[9] The Protective Orders entered in this case govern the material exchanged between the parties, Dkt. No. 16, or between the parties and non-parties, Dkt. No. 86, during discovery and specifically include an "acknowledg[ment] that this Protective Order does not create entitlement to file confidential information under seal." Dkt. No. 16 at 1; *see also* Dkt. No. 86 at 1 (same). Paragraph 13 of the Protective Orders further provide:

> All persons seeking to file redacted documents or documents under seal with the Court shall follow Rule 2(G) of this Court's Individual practices in Civil Cases. No person may file with the Court redacted documents or documents under seal without first seeking leave to file such papers. All persons producing Confidential Discovery Material are deemed to be on notice that the Second Circuit puts limitations on the documents or information that may be filed in redacted form or under seal and that the Court retains discretion not to afford confidential treatment to any Confidential Discovery Material submitted to the Court or presented in connection with any motion, application or proceeding that may result in an order and/or decision by the Court unless it is able to make the specific finding required by law in order to retain the confidential nature of such material. Notwithstanding

---

[8] Allstate in fact did not even file Exhibits 1, 5, 6, 9, 11, 12, and 13 under seal on the docket and instead merely filed placeholder pages stating: "Pursuant to the Protective Order [ECF 85] this Exhibit is Produced to the Court and Defense Counsel of Record ONLY." Dkt. No. 88, Ex. 1, 5–6, 9, 11–13. Allstate instead opted to send the exhibits via email to the Court without previously obtaining permission to do so.

[9] Exhibits 1, 5, 6, 9, 11, 12, and 13 to Allstate's memorandum of law in support of its motion for summary judgment cite to Dkt. No. 85, but that docket entry is the letter motion seeking entry of a proposed protective order. The actual Protective Order referenced can be found at Dkt. No. 86.

its designation, there is no presumption that Confidential Discovery Material will
be filed with the Court under seal. The Parties will use their best efforts to minimize
such sealing.

Dkt. No. 16 ¶ 13; *see also* Dkt. No. 86 ¶ 13 (same). Accordingly, the parties are hereby ORDERED to file a letter on the docket within three (3) days of the date of this Opinion and Order, explaining whether keeping the exhibits under seal is consistent with the presumption in favor of public access to judicial documents and, if seeking to keep exhibits under seal or with redactions, explaining why such sealing or redactions are necessary. *See, e.g.*, *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006); *In re Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 4750774, at *4 (S.D.N.Y. Aug. 11, 2015) ("The mere fact that information is subject to a confidentiality agreement between litigants . . . is not a valid basis to overcome the presumption in favor of public access to judicial documents.").

## CONCLUSION

Mota's motion for partial summary judgment as to liability on his second counterclaim is GRANTED, and Allstate's motion for summary judgment is DENIED.

The parties are hereby ORDERED to file a letter on the docket within three (3) days of the date of this Opinion and Order, explaining whether the exhibits filed under seal are consistent with the presumption in favor of public access to judicial documents and, if seeking to keep exhibits under seal or with redactions, explaining why such sealing or redactions are necessary.

The Clerk of Court is respectfully directed to close Dkt. Nos. 87 and 89.

SO ORDERED.

Dated: May 20, 2022
      New York, New York

LEWIS J. LIMAN
United States District Judge